IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| TAHNEE M. SHOOP, | ) | |
| | ) | |
| Plaintiff, | ) | CV-00-463-ST |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| WILLIAM J. HENDERSON, Post Master General of | ) | |
| the United States Postal Service, | ) | |
| | ) | |
| Defendant. | ) | |

STEWART, Magistrate Judge:

## **INTRODUCTION**

By Order entered December 21, 2001, this court granted the motion by defendant William J.

Henderson, Post Master General of the United States, to approve a settlement reached with plaintiff,

Tahnee M. Shoop.  Pursuant to that settlement agreement, defendant agreed to pay plaintiff the sum of

1 - OPINION AND ORDER

$75,000.00 plus plaintiff's reasonable expenses and attorney fees stemming from her Title VII sexual harassment claim.

Now before the court is plaintiff's Motion for Attorneys' Fees, Costs, and Expenses (docket #63) and Bill of Costs (docket #68) in the combined sum of $166,091.09, consisting of $157.021.00 in fees and $9,070.09 in costs and out-of-pocket expenses (including the Bill of Costs for $8,545.56), plus an additional $1,800.00 in attorney fees for the expense of reviewing and replying to defendant's memorandum (6 hours) and the anticipated cost of preparing for and attending oral argument of this motion (2 hours). For the reasons that follow, that motion and the Bill of Costs are granted.

## ANALYSIS

### I. Attorney Fees

Plaintiff requests attorney fees in the sum of $157,021.00. This amount is obtained by multiplying 159.50 hours by the hourly rate of $80.00 for paralegal Kelley Diermeier; 68 hours by the hourly rate of $80.00 for paralegal Valerie Bramley; 599.8 hours at the hourly rate of $225.00 for attorney Danny L. Hitt; 8.4 hours at the hourly rate of $225.00 for attorney James L. Hiller; and 10.4 hours at the hourly rate of $190.00 for attorney Brian B. Williams.

#### A. Legal Standard

Defendant concedes that under Title VII, plaintiff, as the prevailing party, is entitled to seek an award of costs and attorney fees. An award is committed to the sound discretion of the trial court and is reviewed for an abuse of discretion. *Hensley v. Eckerhart*, 461 US 424, 436-37 (1983); *Thorne v. City of El Segundo*, 802 F2d 1131, 1141 (9th Cir 1986).

2 - OPINION AND ORDER

The calculation of an attorney fees award begins with the lodestar figure, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Miller v. Los Angeles County Bd. of Educ.*, 827 F2d 617, 621 (9th Cir 1987), quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 US 546, 564 (1986). There is a strong presumption that the lodestar amount is reasonable. *Jordan v. Multnomah County*, 815 F2d 1258, 1262 (9th Cir 1987).

In calculating the lodestar, the court must consider those factors identified in *Kerr v. Screen Extras Guild, Inc.*, 526 F2d 67 (9th Cir 1975), *cert denied*, 425 US 951 (1976) which have now been subsumed within the initial calculation. *Cunningham v. County of Los Angeles*, 879 F2d 481, 487 (9th Cir 1988), *cert denied*, 110 S Ct 757 (1990). Subsumed factors include: (1) novelty and complexity of the issues; (2) special skill and experience of counsel; (3) quality of the representation; (4) the results obtained; and (5) the superior performance of counsel.[1] After calculating the lodestar, the fee may be adjusted by any nonsubsumed factors identified in *Kerr*.

---

[1]  A "rote recitation of the relevant factors is unnecessary" so long as the district court adequately explains the basis for the award. *O'Neal v. City of Seattle*, 66 F3d 1064, 1069, n5 (9th Cir 1995). The *Kerr* factors are:

    (1) the novelty and difficulty of the questions involved;
    (2) the skill requisite to perform the legal service properly;
    (3) the preclusion of other employment by the attorney due to acceptance of the case;
    (4) the customary fee;
    (5) the time limitations imposed by the client or the circumstances;
    (6) the amount involved and the results obtained;
    (7) the experience, reputation, and ability of the attorneys;
    (8) the nature and length of the professional relationship with the client;
    (9) the time and labor required;
    (10) similar awards in similar cases.

In *City of Burlington v. Dague*, 505 US 557 (1992), "[t]he Supreme Court . . . cast doubt on the relevance of" whether the fee was fixed or contingent and the undesirability of the case.

B.  **Number of Hours**

Defendant first challenges the sum of $18,200.00 sought by plaintiff for 227.50 hours of work

performed by paralegals Kelley Diermeier ("Diermeier") and Valerie Bramley ("Bramley").  Defendant

concedes that fees for paralegals may be awarded, provided that attorneys in the Portland area

customarily bill clients separately for paralegal work.  *See Missouri v. Jenkins*, 491 US 274, 284-89

(1989).  Defendant only contends that most of the work performed by Diermeier and Bramley was not

true paralegal work, but rather are tasks routinely performed by secretaries and other support staff

which do not qualify as paralegal work and should not be separately compensated.

Contrary to defendant's assertion, the primary tasks of the paralegals described by plaintiff's

time records involve the work of:  (1) locating and interviewing witnesses; (2) documenting witness

interviews and conducting followup investigations; (3) serving difficult witnesses such as Mr. Conklin,

who purposely attempted to avoid service; (4) drafting (not typing) subpoenas, including the description

of documents to be produced; (5) conducting background and courthouse checks for records of

litigation and claims by witnesses; (6) researching and analyzing information obtained pertaining to the

Postal Service EEO office; (7) investigating information available from the Department of Labor;

(8) identifying and preparing documents and exhibits for depositions and trial; (9) researching and

investigating Mr. Conklin's disability claims; (10) tracking the satisfaction of document and discovery

requests; (11) reviewing and organizing the large number of unorganized production documents;

(12) preparing and obtaining affidavits and written witness statements; (13) preparing and updating

pretrial filings, including exhibit lists, and deposition transcripts to be presented at trial; (14) drafting

witness subpoenas for trial; (15) preparing impeachment exhibits and deposition testimony for

designation at trial; (16) communicating with witnesses regarding trial testimony; and

(17) communicating with defense counsel regarding potential mediation and settlement. Those types of

activities are not merely secretarial duties, but are all legitimate paralegal activities.       Plaintiff's law

firm also employs full-time professional secretaries who spent hundreds of hours working on this case,

but for which no compensation is sought. Supplemental Affidavit of Danny L. Hitt, Jr. in Support of

Plaintiff's Motion for Attorney Fees, Costs and Expenses, ¶ 2. Therefore, plaintiff is entitled to recover

all of the hours expended by paralegals Diermeier and Bramley.

      Second, defendant contends that plaintiff's total attorney fees request is unreasonable under the

circumstances of this case. However, defendant has not taken any position on what should be a

reasonable amount and has not specifically identified any work, hours or charges that should not be

paid. Instead, defendant asserts that this court should be guided by the overall nature of the case,

including the factual and legal issues, and also compare plaintiff's request to requests for fees in other

similar cases. This leaves the court in the difficult position of trying to ascertain on its own whether the

number of hours expended by plaintiff's attorneys are reasonable.

      Plaintiff, on the other hand, argues that all of the investigation, discovery, and factual

development of the case was dictated by defendant's refusal to engage in settlement discussions,

despite plaintiff's multiple requests. The record supports this argument.

      In November 2000, immediately following the deposition of plaintiff's Postmaster, Mr. Manu,

plaintiff's counsel attempted to convince defendant's counsel to settle this case before her attorney fees

and expenses increased. Affidavit of Danny L. Hitt, Jr. in Support of Plaintiff's Motion for Attorneys

Fees, Costs and Expenses ("Hitt Aff"), ¶ 15; Ex 4. At that point, after representing plaintiff through

two mandatory and lengthy EEO processes (one pertaining to the sexual harassment and defendant's

failure to inform plaintiff of the outcome of defendant's investigation of her complaint and the second

arising from the termination of plaintiff's employment), the filing of two complaints, preliminary

discovery of 1,115 unorganized and unidentified documents produced by defendant and the taking of

Mr. Manu's deposition, plaintiff's attorney informed defendant on November 30, 2000, that attorney

fees were approximately $37,000.00.  *Id*, ¶ 16; Ex 4.  Defendant rejected that attempt and later

attempts by plaintiff's counsel to initiate settlement discussions.  Instead, defendant repeatedly informed

both plaintiff and the court that a great deal more discovery needed to be completed, including

approximately 10-15 additional depositions, that defendant would be filing dispositive motions,and the

only possibility of ever settling this case was if the court denied defendant's motion for summary

judgment after discovery was completed.  *Id*, ¶ 18; Ex 5.

        In July 2001, this court ordered defendant to respond to plaintiff's requests for a settlement

offer.  On July 31, 2001, defendant did so by letter setting forth the basis upon which defendant

continued to maintain that there were no facts in this case to support a legally cognizable claim and that

it would prevail upon summary judgment, thereby justifying its refusal to offer any money toward

settlement.  *Id*, ¶ 21; Ex 6.  Plaintiff then filed a motion to compel production of files of defendant's in-

house attorney who purportedly told Mr. Manu to ignore all communications from plaintiff's counsel in

an effort to justify her termination on the false grounds that she failed to communicate with defendant.

*Id*, ¶ 23.

        After the court granted that motion, plaintiff again attempted to engage defendant in settlement

discussions, but defendant continued to fail to respond.  *Id*, ¶¶ 26-27.  In late September 2001, over a

6 - OPINION AND ORDER

month before pretrial filings were due, plaintiff made a settlement proposal of $100,000.00, plus

payment of attorney fees and costs of $85,000.00 ($79,000.00 in attorney fees and $6,000.00 in

costs). *Id*, ¶ 28; Ex 8. The parties discussed that the amount of attorney fees would be rapidly

increasing due to additional depositions and trial preparation, and plaintiff kept defendant informed of

those increases. Still defendant failed to respond. *Id*, ¶¶ 29-30.

Finally, after litigating this matter for more than one and a half years and completing numerous

depositions, exchanging three sets of requests for production and interrogatories and over 2,000 pages

of documents, preparing a motion to compel supported by deposition testimony, holding numerous

conferences with the court, researching many issues defendant claimed would be presented in its

motions for summary judgment and as defenses at trial, preparing and filing all pretrial documents on

November 9, 2001 (identifying 24 witnesses), and completing full trial preparation (including briefing

defendant's claimed dispositive motions *in limine*), defendant finally made its first settlement offer on

November 13, 2001. *Id*, ¶¶ 32-33, 36. Further negotiations quickly led to a settlement agreement on

the eve of the pretrial conference, November 21, 2001, only one business day before the start of trial.

Based on this court's experience, the amount of attorney fees requested by plaintiff greatly

exceeds the amount of fees sought by successful plaintiffs after obtaining a favorable jury verdict in

similar cases. Nevertheless, the hours expended by plaintiff's attorneys all appear to have been

necessary and unavoidable given defendant's stance. This is not to say that defendant should be

punished for not settling the case sooner. Defendant cannot be faulted for pursuing viable defenses in

hope of ultimately prevailing. However, defendant also cannot avoid the predictable consequences of

its choice to fully litigate all factual and legal issues prior to settling.

7 - OPINION AND ORDER

Therefore, this court has no legitimate basis upon which to reduce the number of hours requested by plaintiff's attorneys.

## C. **Hourly Rate**

Plaintiff seeks an hourly rate of $225.00 per hour for the services of attorneys Danny L. Hitt ("Hitt") and James L. Hiller ("Hiller") and $190.00 per hour for the services of attorney Brian B. Williams ("Williams"). Defendant contends that these hourly rates are excessive.

To determine the hourly rate the court awards, the court looks at the "prevailing market rates in the relevant community . . . ." *Blum v. Stenson*, 465 US 886, 895 (1984). These rates are set by determining what a lawyer of comparable skill, experience, and reputation could command in the relevant community for similar litigation. *Id* at n11. The amount of attorney fees awarded should "be governed by the same standards which prevail in other types of equally complex [f]ederal litigation [for civil rights work,] such as antitrust cases, and not be reduced because the rights involved may be nonpecuniary in nature." *Id* at 893.

Both Hitt and Hiller are experienced attorneys with excellent reputations who focus their practice on complex, specialized areas of the law, including employment and civil rights litigation. Hitt Aff, ¶¶ 2, 36. Hitt has been practicing law since 1983, has represented both plaintiffs and defendants in employment and civil rights litigation for over 10 years, and has been a speaker at continuing legal education programs regarding various aspects of trial practice and employment law. *Id*, ¶¶ 2-3.

To support the hourly rates requested, plaintiff points to the most recently available Oregon State Bar Economic Survey from 1998 ("Survey"). The Survey does not state a specific rate for

8 - OPINION AND ORDER

employment litigation, but does indicate that the median rate in 1998 for Portland lawyers with 16-20

years experience was $175.00 per hour. Specialty areas have significantly higher rates, ranging from

12% more for environmental lawyers to 25% more for bankruptcy lawyers over the median rate for

attorneys with the same experience level. Utilizing the midpoint figure of 18% for those specialty areas

yields a median rate for Portland area employment lawyers with 16-20 years experience at $206.00

per hour in 1998. The Survey also indicates hourly rates rose 12% between 1994 and 1998. A 3%

annual rate of increase results in a current median rate of $230.00 per hour.

Defendant argues that the Survey may be used as an "initial benchmark in determining a

reasonable hourly rate to be applied to motions for attorney fees" and that the relevant data should be

the average rate of $170.00 per hour or the median rate of $175.00 per hour for all attorneys in the

Portland area with 16-20 years of experience. Even allowing for inflation, defendant faults the lack of

factual support for the proposition that Hitt, as a specialist in employment law, commands the higher

hourly rate of $225.00.

However, factual support for a higher hourly rate is found in the affidavits plaintiff has submitted

by Craig D. Bachman ("Bachman") and Judy Danelle Snyder ("Snyder"). Both affidavits state that the

requested hourly rate of $225.00 for both Hitt and Hiller is reasonable based on their experience and

based on the special and limited community of attorneys willing and able to litigate a case like this and

achieve a successful result following a prolonged and difficult process. Bachman also supports the

hourly rate requested for Williams, although Snyder opines that his hourly rate should be reduced to

$175.00.

9 - OPINION AND ORDER

This court is cautious of requests for attorney fees premised upon a market rate consisting of an artificial "relevant community." *See Frevach Land Co. v. Multnomah County, Dep't of Envtl. Serv., Land Use Planning Div.*, CV-99-1295-HU, Opinion and Order, December 18, 2001, pp. 96-108. However, that problem is not evident here where plaintiff's supporting affidavits are from lawyers who represent both plaintiffs and defendants. Moreover, defendant has not submitted any contrary affidavits questioning the hourly rates requested by plaintiff's attorneys.

Defendant concedes that both Bachman and Snyder are capable, experienced, and certainly qualified to render the opinions expressed in their affidavits. However, defendant believes that, as with all expert witnesses, the weight to be given their affidavits depends to a great extent on the depth of their knowledge of the legal and factual issues involved in this case, and questions the depth of knowledge the two affiants have with respect to this case.

For an attorney such as Hitt who has handled 75-100 discrimination cases, defendant believes that the legal issues were clear from the beginning and the law pertaining to those issues was fairly straightforward. For example, with the exception of the termination of her employment, plaintiff failed to timely exhaust her administrative remedies as required by EEOC regulations. Additionally, plaintiff failed to pursue her claims of sexual harassment by pursuing remedies established by the Postal Service as part of its anti-sexual harassment policy. When she did complain to upper-level management about Mr. Conklin's conduct, the Postal Service placed Mr. Conklin on administrative leave and assigned a two-person team to conduct an investigation. Following completion of that investigation, Mr. Conklin was disciplined and plaintiff was ordered to return to work. When she did not return to work, she was terminated. Other than Mr. Conklin's denial of plaintiff's claims, most of the historical facts were not in

dispute, although the explanation for many events required significant discovery.  But for the discovery issues which culminated in a motion to compel, defendant contends that this case should have been relatively straightforward for an attorney with Hitt's experience.

However, defendant does not give any indication of what work on any legal issue it believes plaintiff performed unnecessarily or to excess.  In contrast, both parties addressed a number of legal issues in their trial memoranda, motions *in limine*, and in their respective responses, as well as a number of discovery issues.  Moreover, the law applicable to this case was complicated by fundamental changes in the law.  For example, defendant's Trial Memorandum asserts affirmative defenses arising under *Faragher v. City of Boca Raton*, 524 US 775 (1998) and *Burlington Indus., Inc. v. Ellerth*, 524 US 742 (1998), which defendant sought leave to add in its pretrial filings.

Plaintiff notes that many of the legal issues relevant to this litigation were also peculiar to claims against the Postal Service and are not routinely encountered in employment litigation, describing many of the arguments posed by defendant as "unique."  One such argument concerned whether and at what point plaintiff had a right to legal representation under the Postal Service's union contract and regulations.  That issue arose because Mr. Manu's testified that he had the legal right to terminate plaintiff for failure to provide information to him personally, even though the required information was provided through plaintiff's attorney.

Defendant also contended that:  (1) its union contract and regulations precluded it from considering the record of the perpetrator's mental breakdown, disability, and compensation claims when determining whether to require plaintiff to return to work with him; (2) its union contract and regulations required plaintiff to return to work with the perpetrator and to fire her for failing to do so,

11 - OPINION AND ORDER

unless the perpetrator posed a "clear and present danger" to her; (3) its rules, regulations, and union

contracts required it to destroy all records of past offenses and precluded it from considering the

perpetrator's history of past offenses in responding to plaintiff's complaint; (4) under its system, the

perpetrator did not qualify as plaintiff's "supervisor," although he was her "Saturday supervisor;" (5) its

rules and regulations required plaintiff to personally report her complaint to its in-house EEO office

within 45 days; and (6) actual notice provided by Postal Service management to its EEO office and the

involvement of its EEO office in management's investigation of plaintiff's complaints was not adequate.

In light of these claims, this case was not as simple as defendant now contends.

Accordingly, this court must conclude that the hourly rates sought for attorneys Hitt and Hiller

are within the range of reasonableness for Portland lawyers with similar experience providing similar

services.  However, based upon Snyder's affidavit, this court will reduce the hourly rate for Williams

from $190.00 to $175.00 per hour.  This reduces plaintiff's attorney fees to $156,865.00 plus

$1,800.00 incurred by Hitt in connection with this motion, for a total award of $158,665.00.

This sum is more than twice the amount paid to plaintiff pursuant to the settlement agreement

and more than this court has awarded to a prevailing party in any other employment discrimination case.

However, defendant knew at the time the settlement was reached that the total amount of plaintiff's

attorney fees and costs were $100,000.00 on October 19, 2001 (Hitt Aff, Ex 11) and would increase

substantially thereafter due to pretrial filings.  Fees need not be proportional to the amount of damages

recovered in civil rights cases.  *City of Riverside v. Rivera*, 477 US 561, 576 (1986).  That is

especially apparent here.

## II.  Costs and Out-of-Pocket Expenses

12 - OPINION AND ORDER

Plaintiff seeks to recover her costs and out-of pocket expenses (including the Bill of Costs) in the sum of $9,070.09.

## A.  <u>Legal Standard</u>

According to FRCP 54(d)(1), "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ."  The trial judge has wide discretion in awarding costs under FRCP 54(d).  *Trans Container Serv. (Basel) A.G. v. Security Forwarders, Inc.*, 752 F2d 483, 488 (9th Cir 1985) (finding that trial judge can deny costs to a prevailing party in its discretion if it states "reasons"); *K-S-H Plastics, Inc. v. Carolite, Inc.*, 408 F2d 54, 60 (9th Cir), *cert denied*, 396 US 825 (1969) (holding that the "trial court has wide discretion in awarding costs").  Moreover, the court can deny costs to a prevailing party for reasons other than punishing misconduct.  *Association of Mexican-American Educators v. State of California*, 231 F3d 572, 593 (9th Cir 2000) (overruling *National Info. Serv. Inc. v. TRW, Inc.*, 51 F3d 1470 (9th Cir 1995) "to the extent that it held that *only* misconduct may support the denial of costs to a prevailing party").

Expenses which may be taxed as costs against the losing part are enumerated in 28 USC § 1920 as follows:

> (1)  Fees of the clerk and marshal;
> (2)  Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3)  Fees and disbursements for printing and witnesses;
> (4)  Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5)  Docket fees under section 1923 of this title;
> (6)  Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Although a district court has broad discretionary power to allow or disallow a prevailing party to recoup the costs of litigation, the court may not tax costs beyond those authorized by 28 USC § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 US 437, 441-42 (1987). Courts are, however, free to construe the meaning and scope of the items enumerated as taxable costs in § 1920. *Aflex Corp. v. Underwriters Lab., Inc.*, 914 F2d 175, 177-78 (9th Cir 1990) (*per curiam*), *cert denied*, 502 US 812 (1991).

**B.  Amount of Claimed Costs**

The largest portion of plaintiff's costs is for deposition expenses in the sum of $7,604.33. Defendant objects to this request, arguing that plaintiff has failed to demonstrate that the depositions were obtained necessarily for use in the case. Plaintiff responds that its depositions were of witnesses listed in the parties' pretrial filings, most of whom were listed by defendant. In addition, plaintiff designated all or portions of nine depositions to be read as substantive evidence at trial (docket #47).

Fees incurred in obtaining deposition transcripts are generally available to the prevailing party under 28 USC § 1920(2). *Washington State Dep't of Transp. v. Washington Natural Gas Co.*, 59 F3d 793, 806 (9th Cir 1995). Prior to allowing the taxation of deposition transcript fees, however, "the court must determine whether the transcript was 'necessarily obtained for use in the case.'" *Frederick v. City of Portland*, 162 FRD 139, 142-43 (D Or 1995), quoting 28 USC § 1920(2).

"A deposition need not be absolutely indispensable to justify an award of costs; rather, it must only be reasonably necessary at the time it was taken, without regard to later developments that may eventually render the deposition unneeded at the time of trial or summary disposition." *Id* at 143, citing

*Barber v. Ruth*, 7 F3d 636, 645 (7th Cir 1993). Depositions which are merely useful for discovery, investigative, or preparatory purposes are not taxable items and are expenses "incidental to normal preparation for trial." *Independent Iron Works, Inc. v. United States Steel Corp*., 322 F2d 656, 678 (9th Cir), *cert denied*, 375 US 922 (1963); citing *Republic Mach. Tool Corp. v. Federal Cartridge Corp.*, 5 FRD 388, 388-89 (D Minn 1946).

Despite some authority to the contrary, the generally accepted view is that introduction of a deposition at trial is not a prerequisite for finding that it was necessary to take the deposition. *Hudson v. Nabisco Brands, Inc.*, 758 F2d 1237, 1243 (7th Cir 1985), *overruled on other grounds*, *Provident Bank v. Manor Steel Corp.*, 882 F2d 258 (7th Cir 1989). Depositions used "for determining what portions of the testimony to present as well as for preparing to impeach witnesses" are deemed necessary for use in the case. *Commercial Credit Equip. Corp. v. Stamps*, 920 F2d 1361, 1368 (9th Cir 1990). And even if not used at trial, a deposition is taxable if it was reasonably necessary under the circumstances at the time it was taken, whether or not it is used later.

> While some cases hold that the costs of depositions are taxable only if they were either introduced in evidence or used at trial in examining or impeaching witnesses, the more equitable as well as more practical view is to allow the recovery of such expense if the taking of the deposition is shown to have been reasonably necessary in the light of facts known to counsel at the time it was taken.

*Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F2d 1087, 1099 (5th Cir 1982) *modified on other grounds*, 701 F2d 542 (5th Cir 1983) (*en banc*).

Plaintiff has neither attached the court reporters' bills nor itemized the depositions in its disbursements by name of the witnesses. Therefore, this court cannot ascertain for which witnesses

plaintiff seeks reimbursement of depositions.  However, plaintiff does state that all of the depositions would have been used either as substantive testimony at trial or to prepare for cross-examination and impeachment purposes at trial.

Defendant has failed to overcome the presumption favoring the prevailing party.  Defendant has simply stated that the depositions were not necessary to properly present plaintiff's case.  Defendant does not specify which depositions it believes were unnecessary or give any specific reasons why it should not have to pay for a particular deposition.

To adequately prepare for trial, it was necessary for plaintiff to obtain copies of the transcripts not only as substantive evidence, but also to review for all potential witnesses.  For an attorney not to obtain copies of deposition transcripts of potential witnesses, including his/her own client, would be tantamount to malpractice.  Accordingly, plaintiff is entitled to all of her deposition expenses.

Because defendant does not contest any of the other costs sought by plaintiff, plaintiff is entitled to recover the amount requested on her Bill of Costs of $8,545.56 plus her other out-of pocket costs for copying, delivery charges, and online research of $524.53 ($9,070.09 - $8,545.56 = $524.53).

## ORDER

For the reasons set forth above, plaintiff's Motion for Attorneys' Fees, Costs, and Expenses (docket #63) is GRANTED in the sum of $158,665.00 plus out-of-pocket expenses over and above the Bill of Costs in the sum of $524.53, for a total of $159,189.53, and plaintiff's Bill of Costs (docket #68) is GRANTED in the sum of $8,545.53.

DATED this 1st day of May, 2002.

/s/ Janice M. Stewart_____

16 - OPINION AND ORDER

Janice M. Stewart
United States Magistrate Judge

17 - OPINION AND ORDER